IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RYAN BONNEAU,

        Plaintiff,        CV-99-1275-ST

    v.        OPINION AND ORDER

CROSSLAND MORTGAGE CORP.,

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Ryan Bonneau ("Bonneau"), worked as a Loan Originator for defendant, Crossland Mortgage Corp. ("Crossland"), for about three months in 1999. On August 11, 1999, approximately a month after his termination, Bonneau filed this lawsuit in Multnomah County Circuit Court for the State of Oregon alleging seven claims to recover unpaid wages and commissions. Crossland timely removed the case to this court based on diversity jurisdiction under 28 USC § 1332 and filed an Answer with counterclaims seeking disgorgement of all

1 - OPINION AND ORDER

compensation paid to Bonneau because he violated his duty of loyalty and breached his duty of good faith and fair dealing by engaging in fraudulent and dishonest conduct. The case was initially set for a jury trial on March 6, 2001 (docket # 32), which was later reset to May 1, 2001 (docket # 63). However, on the day of trial, the case was dismissed because Bonneau had filed for a Chapter 13 bankruptcy (dockets # 73 & # 74). About a month after the bankruptcy proceeding was dismissed, the case was reopened on Crossland's motion (docket # 78) and trial was reset to December 4, 2001 (docket # 83). However, Bonneau then filed for a Chapter 7 bankruptcy on November 11, 2001. As a result, the trial date was again stricken (docket # 85), and the court entered an Order of Dismissal on April 19, 2002 (docket # 86) "without prejudice as to the rights of the parties to reopen the proceedings if the Bankruptcy Court does not resolve the dispute."

Bonneau's Chapter 7 bankruptcy case terminated on October 27, 2003. Over six years later on June 17, 2010, Bonneau filed a Motion to Reopen Case (docket # 88). For the reasons set forth below, that motion is denied.

## DISCUSSION

### I.  Failure to Confer

Crossland first objects to Bonneau's motion on the basis that he failed to comply with Local Rule 7-1(a) by certifying that he made a good faith effort to confer prior to filing the motion. Bonneau explains this failure on the basis that he did not know whom to contact and that, in any event, conferral would have been futile.

This court is not persuaded by Bonneau's purported lack of knowledge as to whom to contact in order to confer. The court's docket reveals a list of five attorneys representing

2 - OPINION AND ORDER

Crossland, four of whom are with the Bullard Smith law firm in Portland. Nevertheless, Bonneau points to the statement by one of Crossland's attorneys that after the April 19, 2002 dismissal order, the Bullard Smith law firm was no longer involved in representing Crossland or Wells Fargo Home Mortgage, Inc. with whom Crossland had merged on January 30, 2001.[1] Barnhart Decl. (docket # 92), ¶ 2. However, until those attorneys file a notice or motion to withdraw from further representation, they remain Crossland's attorneys in this case for receipt of all filings by Bonneau and the court, as well as for all attempts to confer by Bonneau. Thus, conferral was possible.

Nevertheless, this court agrees with Bonneau that conferral would have been futile. Rather than initially seeking to strike Bonneau's motion for failing to confer, Crossland filed a response seeking an extension of time to respond (docket # 91). As indicated by its response, Crossland adamantly contests reopening this case, a clear indication that conferral would have been futile. Thus, the court will not strike the motion for failing to confer as required by Local Rule 7-1(a).

## II.    Statute of Limitations Bar

Next Crossland claims that the case should be not reopened because Bonneau's claims are barred by the statute of limitations. In this diversity case, the court must apply Oregon's statute of limitations and tolling provisions. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F2d 484, 484 (9th Cir 1987); *Johnson v. Railway Exp. Agency, Inc.*, 421 US 454 (1975).

---

[1] According to Senior Counsel for Wells Fargo Bank, M.A., formerly known as Wells Fargo Home Mortgage, Inc., the merger with Crossland actually occurred on January 1, 2000. Brennan Decl. (docket # 104), ¶¶ 1-2.

Bonneau alleges seven claims against Crossland, all arising under Oregon law: (1) failure to pay wages upon termination (ORS 652.140); (2) breach of contract to pay commissions; (3) wrongful deduction from wages (ORS 652.610); (4) quantum meruit; (5) conversion; (6) money had and received; and (7) breach of contract to reimburse expenses. The breach of contract claims are subject to the six-year statute of limitations in ORS 12.080, and the remaining claims are subject to the two-year statute of limitations in ORS 12.110.

These claims accrued no later than July 8, 1999, when Crossland terminated Bonneau's employment. Thus, the two-year statute of limitations expired on five of his claims on July 8, 2001, and the six-year statute of limitations expired on his breach of contract claims on July 8, 2005. He timely filed this lawsuit on August 11, 1999. After this case was dismissed on April 19, 2002, he filed for bankruptcy protection. The bankruptcy proceedings terminated by October 21, 2003, but Bonneau did not file his Motion to Reopen until June 17, 2010, nearly six and a half years later.

Bonneau argues that the statutes of limitations on his claims were tolled when he filed this case. He is correct to the extent that once a case is timely filed and remains pending, it will not be barred when the statutes of limitations later expire. However, this case did not remain pending, but was involuntarily dismissed without prejudice on April 19, 2002. That dismissal did not confer a temporally unlimited right on Bonneau to refile his claims. Dismissals "without prejudice" do not automatically toll statutes of limitations. A dismissal "without prejudice does not mean without consequence. If the case is dismissed and filed anew, the fresh suit must satisfy the statute of limitations." *Tuke v. United States*, 76 F3d 155, 156 (7th Cir 1996); *see also Reynolds v. United States*, 782 F2d 837, 838 (9th Cir 1986) ("In dismissing the complaint without

prejudice, the court left the plaintiff free to start over, if he had the time and inclination to do so"); Black's Law Dictionary (9th ed. 2009) ("dismissal without prejudice" is a "dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period"). So too must a request to reopen fall within any applicable limitations period. By permitting Bonneau to reopen this case, instead of filing a new case, the court saved him the expense of paying another filing fee and allowed him to pick up the case again where it had stopped.

Had the parties jointly agreed to toll the limitations period, this court would be in a position to excuse Bonneau's long delay in moving to reopen. *See, e.g. Natarajan v. Paul Revere Life Ins. Co.*, 2009 WL 1117405 *2 (MD Fla April 24, 2009) (Joint Motion to Stay stating that "any applicable statute of limitations shall be tolled" sufficient to toll four-year statute of limitations on fraud claims for the two-year period between filing of joint motion stay and filing of motion to reopen). However, no such stipulation was filed in this case. "[W]hen the parties do not toll the limitations period, a 'plaintiff assumes the risk that by the time the case returns to district court, the claim will be barred by the statute of limitations or laches.'" *Am. States Ins. Co. v. Dastar Corp.*, 318 F3d 881, 887 (9th Cir 2003), quoting *James v. Price Stern Sloan, Inc.*, 283 F3d 1064, 1066 (9th Cir 2002). Although that case was decided in the context of voluntary dismissals to pursue appeals, Bonneau has cited, and this court is aware of, no case law suggesting that a different rule applies in the context of a dismissal without prejudice by a district court pending termination of bankruptcy proceedings.

///

///

///

5 - OPINION AND ORDER

Oregon has a "savings statute," ORS 12.220,[2] which tolls the statute of limitations for re-filing a complaint that has been dismissed without prejudice. If an action is timely filed and then "is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action," the plaintiff may file the same action again without being subject to dismissal by reason of the statute of limitations. ORS 12.220(1). However, that new action must be filed "not later than 180 days after the judgment dismissing the original action is entered." ORS 12.220(2). Thus, if no bankruptcy proceeding had been pending, Bonneau would have had to reopen this case within 180 days after dismissal to avoid any statute of limitations bar.

However, as long as the bankruptcy proceeding was pending, Bonneau did not need to worry about reopening his case within that 180-day period under ORS 12.220(2) to avoid the statute of limitations bar. Under the Bankruptcy Code, 11 USC § 108(c), if applicable non-bankruptcy law fixes a period for commencing or continuing a legal action and that period expires while a bankruptcy case is pending, then a plaintiff has an additional 30 days to file suit. Thus, once his bankruptcy proceeding ended, Bonneau had to timely reopen this case to avoid the bar of any expired statutes of limitations. To avoid the two-year statutes of limitations (which had expired on five of his claims on July 8, 2001, while the case was pending in this court), he had to reopen this case within 30 days after October 21, 2003, or by November 20, 2003. To

---

[2] ORS 12.220 provides in pertinent part as follows:
(1) Notwithstanding ORS 12.020, if an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action, or is involuntarily dismissed with prejudice on the ground that the plaintiff failed to properly effect service of summons within the time allowed by ORS 12.020 and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against the defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed.
(2) If, pursuant to subsection (1) of this section, a new action is commenced in the manner provided by ORS 12.020 not later than 180 days after the judgment dismissing the original action is entered in the register of the court, the new action is not subject to dismissal by reason of not having been commenced with the time allowed by statute.

6 - OPINION AND ORDER

avoid the six-year statutes of limitations on his other two claims (which had not yet expired), he had to reopen his case within six years after July 8, 1999, or no later than July 8, 2005. He did not do so.

Even if Bonneau is right (which he is not) and the statutes of limitations are tolled while his claims were pending in this court and in bankruptcy court, he has still lost all of his claims due to the passage of time. Assuming that the statutes of limitations all started to accrue only when the bankruptcy proceedings terminated, then they all expired no later than six years plus 30 days after October 21, 2003, or by November 20, 2009, about six months before Bonneau sought to reopen this case.

To avoid this bar, Bonneau relies on ORS 12.160 which tolls the statutes of limitations for persons who are "younger than 18 years of age" or who are "insane" at the time "the cause of action accrues." It appears that Bonneau has spent most of his time since November 2002 in prison.[3] However, as he concedes, his imprisonment does not toll the statutes of limitations

---

[3] He was arrested and detained on November 15, 2002, for allegedly committing various federal crimes involving real property fraud in *USA v. Bonneau, et al*, Case No. CR 02-467-KI (docket # 13). On November 24, 2003, after pleading guilty, Judge King sentenced Bonneau to 33 months in prison, followed by five years of supervised release (docket # 160). That supervised release commenced on June 7, 2005. About a year later on June 15, 2006, Bonneau was arrested and detained for violation of this supervised release (docket # 187).

In September 2006, Bonneau was indicted for various federal crimes involving unrelated real property fraud in *USA v. Bonneau*, Case No. CR 06-380-MO, and was detained pending trial (docket # 7). On May 8, 2007, Judge King revoked his supervised release in Case No. CR 02-467-KI and sentenced him to prison for nine months, with credit for time served, followed by 48 months of supervised release (docket # 229).

In November 2007, Bonneau pleaded guilty to some of the charges in Case No. CR 06-380-MO (docket # 120) and in April 2008 was sentenced to 30 months followed by five years supervised release (docket # 147). That term of supervised release commenced on May 21, 2009. However, by August 3, 2009, that supervised release was revoked, and Bonneau was sentenced to two months in prison to be served concurrently with the revocation sentence in Case No. CR 02-467-MO (docket # 155). In December 2009, Bonneau again was charged with violating the terms of his supervised release in both cases and detained pending a hearing.

Recently on October 6, 2010, Bonneau was indicted for possession of drugs in *USA v. Bonneau*, Case No. CR 10-402-MO, and again was charged in the other two cases with violating his supervised release. On October 13, 2010, Bonneau pled guilty to some of the charges in Case No. CR 10-402-MO (docket # 6) and admitted violating his supervised release in the other two cases. He is awaiting sentencing.

under ORS 12.160.[4]  Instead, he argues that he falls within the definition of "insane" due to his bipolar disorder and ADD/ADHD and symptoms.  The term "insane" is not defined in ORS 12.160.  However, in *Hoffman v. Keller*, 193 F Supp 733, 735 (D Or 1961), this court defined "insane" as used in Oregon's tolling statutes to mean "such a condition of mental derangement as actually to bar the sufferer from comprehending rights which he is otherwise bound to know," citing 54 CJS Limitation of Actions § 242.  Later in *Roberts v. Drew*, 105 Or App 251, 254, 804 P2d 503, 505 (1991), the Oregon Court of Appeals stated that the term "insane" in ORS 12.160 "could include mental conditions of any character that have the requisite disabling effect" and adopted the definition in *Hoffman* that a condition has the requisite disabling effect if it is "such a condition of mental derangement as actually to bar the sufferer from comprehending rights he is otherwise bound to know."  Bonneau's disorders clearly do not fall within this definition.

Bonneau also argues that as a matter of equity, Crossland should not be able to rely on the statutes of limitations.  Two doctrines may extend the statute of limitations period or preclude a defendant from asserting the defense:  equitable tolling and equitable estoppel.  The federal version of these doctrines is concisely explained as follows:

> "Equitable tolling" focuses on "whether there was excusable delay by the plaintiff:  If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a

---

[4] Prior to 1997, this statute included any person "imprisoned on a criminal charge."  However, in 1996 the Oregon legislature removed persons "imprisoned on a criminal charge" from the statute.  Barnhart Decl., Ex. B. (1997 Oregon Laws, Chapter 339); *Bock v. Collier*, 175 Or 145, 151 P2d 732 (1944).

plaintiff from filing suit, sometimes referred to as "fraudulent concealment."

*Lukovsky v. City and County of San Francisco*, 535 F3d 1044, 1051 (9th Cir 2008) (citations omitted), *cert. denied sub nom., Zolotarev v. City and County of San Francisco, Cal.*, 129 S Ct 1997 (2009).

As one excuse for not reopening this case sooner, Bonneau argues that he did not become aware of the termination of the Chapter 7 bankruptcy proceedings until "roughly one year after its October 27, 2003 dismissal" due to his incarceration. Plaintiff's Reply, p. 7. He explains that his "mail was stacking up while he was out of state in Lompoc, CA." *Id*, p. 16. When external forces beyond a plaintiff's control prevent a plaintiff from bringing his claim, then the statute of limitations is tolled as a matter of equity. *See Osbourne v. United States,* 164 F2d 767 (2nd Cir 1947) (plaintiff's internment by Japan during World War II tolled the limitations period on his Jones Act claim against his employer for injury occurring immediately prior to his internment). It appears that the one year delay in Bonneau learning of the termination of the bankruptcy proceeding was due to external forces beyond his control and should be excused.

At best, applying the doctrine of equitable tolling due to the delayed notice, the statutes of limitations would be extended for one year. The two-year statute of limitations still expired on five of Bonneau's claims while the case was pending in this court and in bankruptcy court. Applying 11 USC § 108(c), he had 30 days after termination of the bankruptcy proceeding to reopen this case. Even if that limitation is extended by one year due to equitable tolling, he had to reopen this case to preserve those five claims in late 2004 or early 2005. Adding one more year to the six-year statutes of limitations on his other two claims (which did not expire while the

9 - OPINION AND ORDER

case was pending in this court and bankruptcy court), he had to reopen his case within seven years after July 8, 1999, or no later than July 8, 2006. He did not do so. Therefore, the doctrine of equitable tolling does not avoid the bar of the statutes of limitations.

Bonneau also attempts to blame Crossland for his delay in seeking to reopen this case. In late 2004, after learning of the termination of the bankruptcy proceedings, he telephoned some lawyers in the Bullard Smith law firm to ascertain if they were still representing Crossland and interested in proceeding with this case, but they did not return his calls. Since he "was under the impression the clock was stopped (statute of limitations tolling), he was not concerned right away with being stonewalled." Plaintiff's Reply, p. 7. Because Crossland had changed its name and address by that time, it "was nowhere to be found" and hiding from him. *Id*, p. 15. Because Crossland relieved itself of counsel and failed to update its new name and address with the court while Bonneau was imprisoned with disabilities and without adequate access to legal materials, he argues that Crossland should be equitably estopped from relying on the bar of the statutes of limitations.

Under Oregon law, a defendant can be equitably estopped by verbal representations or conduct from invoking a statute of limitations defense. *Gehrke v. CrafCo, Inc.*, 143 Or App 517, 525, 923 P2d 1333, 1337 (1996) (citations omitted). "'To constitute an equitable estoppel, or estoppel by conduct, there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.'" *Bash v. Fir Grove Cemeteries, Co.*, 282 Or 677, 687, 581 P2d 75, 80 (1978), quoting *Bennett v. City of Salem*, 192 Or 531, 541, 235 P2d 772, 776 (1951) (*en*

10 - OPINION AND ORDER

*banc*). Although proof of fraudulent intent is unnecessary, "[t]here must, however, be a justifiable reliance by the party seeking to invoke estoppel, and that reliance must be reasonable." *Donohoe v. Mid-Valley Glass Co.*, 84 Or App 584, 587, 735 P2d 11, 12 (1987) (citations omitted).

Even if Crossland could be construed as making some false representation concerning its name and location, Bonneau cannot show that such a misrepresentation was intended as an affirmative inducement for him not to reopen his case within the statute of limitations period. In fact, Crossland did nothing that led Bonneau to sleep on his rights. To reopen his case, Bonneau did not need to first locate Crossland. All he needed to do was file a motion with the court to reopen this case after first attempting to confer with one of Crossland's attorneys listed on the court's docket.

If anything, it appears that Bonneau was operating under a mistaken view of the law that the statute of limitations was tolled while he was imprisoned. However, a mistake of law is a legally insufficient basis for equitable tolling. Because Bonneau's own allegations and statements prove that he cannot meet the legal and factual requirements for equitable tolling, his claims are barred by the applicable statutes of limitations. Therefore, reopening this case would be a futile gesture.

### III.   Undue Delay and Prejudice

Crossland also argues that Bonneau's motion should be denied due to undue delay and prejudice. However, due to the statute of limitations bar, the court need not address this alternative argument.

///

## **ORDER**

For the reasons set forth above, Bonneau's Motion to Reopen Case (docket # 88) is DENIED.

DATED this 27th day of October, 2010.

                                              s/ Janice M. Stewart_____
                                              Janice M. Stewart
                                              United States Magistrate Judge